[Crim. No. 6408.   Second Dist., Div. Three.   Apr. 10, 1959.]

THE PEOPLE, Respondent, v. HAROLD L. McDANIEL, Appellant.

H. Clay Jacke, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Robert M. Sweet, Deputy Attorney General, for Respondent.

SHINN, P. J.—Harold L. McDaniel was indicted for and in a jury trial convicted of selling heroin. His motion for new trial was granted upon the ground of the insufficiency of the evidence to support the verdict and the matter was re-

tried to the court. McDaniel was convicted at the second trial and was sentenced to state prison. He appeals from the judgment and the denial of his motion for new trial.

Richard Velasquez, an undercover narcotic inspector for the State of California, was the only witness for the People. The following is the substance of his testimony. At about 9 p. m. on August 19, 1957, Velasquez saw appellant standing outside a drive-in restaurant on the southwest corner of Adams and Normandie in Los Angeles. The inspector approached McDaniel and asked him "if he had anything." Upon receiving an affirmative answer, Velasquez asked appellant if he had a "ten dollar paper." McDaniel said that he did and asked to see the inspector's money. Velasquez replied that he would have to see the "stuff" first. Appellant told the inspector to acompany him and the two men started to walk south on Normandie. McDaniel said that he was one of the biggest peddlers in the area and supplied most of the peddlers on the corner. At his request, Velasquez exhibited the $10. Appellant then departed, returning a few minutes later. The inspector gave him the money and McDaniel handed Velasquez a rubber balloon that was proved to contain heroin. Velasquez then asked appellant where he could see him again if he wanted more narcotics and McDaniel replied that he could see him "right there at the corner."

The inspector testified that he did not recall having seen McDaniel prior to August 19th. He saw him in the vicinity of the drive-in on three occasions between August 19th and September 13th. On one of those occasions, McDaniel told Velasquez to be careful because "the heat is around here." On another occasion, Velasquez gave a description of appellant to two other narcotic inspectors who picked him up for questioning and released him after ascertaining his name and address. Velasquez was standing beside McDaniel at the drive-in when the officers accosted him. Appellant was arrested on September 13th during a round-up of narcotic peddlers in which 25 other persons were also arrested.

On cross-examination, Velasquez was asked to describe the man who sold him the heroin on August 19th. He testified that the seller was a male Negro, about 32 years of age, approximately 5 feet 8 inches tall and weighing about 150 pounds. The witness was shown the transcripts of his testimony before the grand jury and at the previous trial and he admitted testifying on the latter occasion that the seller was between 5 feet 8 and 5 feet 9 "hat and all" and weighed about

140 pounds. Although he told the grand jury that the seller had a horizontal scar over the right cheek, Velasquez admitted testifying at the previous trial that the blemish was a crease or wrinkle rather than a scar, that it was on the left cheek rather than the right, and that it ran diagonally rather than horizontally. In explaining the discrepancy, Velasquez stated that the description he gave the grand jury was a mistaken one; when he first noticed the blemish, he was facing the seller and the blemish appeared to be on his (the inspector's) right.

McDaniel denied selling any heroin to Velasquez. He testified that he was 5 feet 6 inches tall and weighed 130 pounds. A half inch scar was visible on his left cheekbone. Although he lived near the intersection of Normandie and Adams and was around the drive-in "more or less all the time," McDaniel never saw Velasquez prior to his arrest. He admitted being picked up by the other inspectors for questioning. On August 19th, he made a down payment on an apartment and signed a rental agreement. At 6:15 p. m. he bought some hamburgers at the drive-in and went to the apartment of a Mrs. Taylor, where he remained all night.

Mary Elizabeth Taylor testified on appellant's behalf that she had no specific recollection of the events of August 19th. However, she recalled a day during the late summer of 1957 when McDaniel told her about renting an apartment. On that occasion, appellant arrived at her apartment at about 7 p. m. and they took a ride in his car, returning about 10 p. m. McDaniel did not leave until the following morning.

The points on the appeal are that the court based its finding of guilt upon matters not in evidence and that McDaniel was deprived of a fair trial by reason of the three week delay in effecting his arrest. Neither contention is meritorious.

Under his first point, appellant directs our attention to the following statements made by the court during the course of the trial: "The defendant before the Court, I think, closely fits the description here. We have evidence that they are in the vicinity, a description, and these narcotic peddlers up there. *But, all the men that work under cover try to watch these defendants until they make a sale. They watch these fellows sometimes for a long time before they try to make a buy, even if it is a week or ten days, and they get a good picture of them because they are going to identify them six, eight, or ten months later. Now I think the evidence is that he has seen this man around there numerous times in the vicinity of Adams and Normandie.* He sees the defendant at

the scene there. His size; he has a general description of him. He can establish that in his own mind and afterwards he sees the man and pointed him out again. I don't think there is any showing that this is not the man; he fits the general description.'' (Emphasis added.)

McDaniel argues that since there was no evidence that he was kept under a lengthy surveillance or that the inspector saw him in the vicinity of the drive-in on more than three occasions, the court must be deemed to have based its finding of guilt upon matters outside the record. The record does not support this contention. Appellant was ably represented by a deputy public defender. The point he now urges was vigorously argued to the trial court. The sufficiency of the evidence of identification depended upon the court's acceptance of the testimony of Officer Velasquez. The court gave it full credit. It is not for this court to say that the identification was insufficient. (*People* v. *Alonzo,* 158 Cal.App.2d 45, 47-48 [322 P.2d 42].)

■ Under this second point, McDaniel argues that he was prejudiced by the delay in arresting him because the lapse of time rendered identification uncertain and made it more difficult for him to remember his own whereabouts on August 19th. The argument is untenable. The grand jury indicted appellant within the three-year period of limitations and the delay was without legal significance. (Pen. Code, § 800; *People* v. *Bradford,* 130 Cal.App.2d 606, 608 [279 P.2d 561].) Appellant was able to account for his actions on the evening of the alleged offense. If the court had believed him and the testimony of Mrs. Taylor, he would doubtless have been acquitted.

The judgment and order appealed from are affirmed.

Wood (Parker), J., and Vallée, J., concurred.